AO 91
Rev. 11/82

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>TROY DANIEL LONG | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>12-0965M |

Complaint for violation of Title 49, United States Code, Section 46502(a)(1)(B).

| NAME OF MAGISTRATE JUDGE<br><br>SUZANNE H. SEGAL | UNITED STATES MAGISTRATE JUDGE | LOCATION<br>Los Angeles, CA |
|---|---|---|
| DATE OF OFFENSE<br>April 20, 2012 | PLACE OF OFFENSE<br>Compton, California | ADDRESS OF ACCUSED (IF KNOWN)<br>9911 Belmont St #812, Bellflower, CA (last known) |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On or about April 20, 2012, in Los Angeles County, within the Central District of California, defendant TROY DANIEL LONG attempted to seize or exercise control of an aircraft in the special aircraft jurisdiction of the United States by force, violence, threat of force or violence, or any form of intimidation, and with wrongful intent, where the aircraft would have been in the special aircraft jurisdiction of the United States had the aircraft piracy been completed.

FILED
CLERK, U.S. DISTRICT COURT
APR 23 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
  (See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br><br>DAVID GATES |
|---|---|
| | OFFICIAL TITLE<br>Special Agent |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE(1) | DATE<br>April 21, 2012 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

AUSA Melissa Mills      REC: DETENTION

FINDING RE PROBABLE CAUSE

On  4/20/12 , at  3:10 pm , Agent David Gates [name] of the  FBI  [agency] appeared before me regarding the probable cause arrest of defendant(s)  Troy Daniel Long  [name(s)] occurring on  April 20, 2012  [date and time], at  Los Angeles , California [city].

Having reviewed the agent's statement of probable cause, a copy of which is attached hereto, the Court finds that there (exists)/~~does not exist~~ probable cause to arrest the defendant(s) for a violation of Title 49, United States Code, Section 46502(a)(1)(B) . [statute]

/SHS/ It is ordered that defendant(s)  Troy Daniel Long  [name(s)] be held to answer for proceedings under Federal Rule of Criminal Procedure 5 / 40 on  April 23, 2012 . [date]

/___/ It is ordered that defendant(s) ~~_____~~ [name(s)] be discharged from custody on this charge forthwith.

DATED:  4/20/12 , at  3:10  a.m./(p.m.)

_____
THE HONORABLE SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

## A F F I D A V I T

I, David Gates, being duly sworn, hereby depose and state the following:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and I have been so employed for over eight years. Since August 2004, I have been assigned to the Los Angeles International Airport (LAX) Office of the FBI, where I investigate violations of Federal law which occur within the airport environment and on board aircraft.

2. This affidavit is in support of a complaint charging TROY DANIEL LONG, ("LONG") with one violation of Title 49, United States Code, Section 46502: Aircraft Piracy, which occurred on April 20, 2012 at the Compton/Woodley Airport (CPM), located in Compton, California.

3. The facts set forth in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses. This affidavit is intended to show that there is probable cause for the requested complaint and does not purport to set forth all of my knowledge or investigation into this matter.

4. Title 49, United States Code, Section 46502 states, in pertinent part, the following:

"(a) In Special Aircraft Jurisdiction.--

(1) In this subsection-

(A) "aircraft piracy" means seizing or exercising control of an aircraft in the special aircraft jurisdiction of the United States by force, violence, threat of force or violence, or any form of intimidation, and with wrongful intent.

(B) an attempt to commit aircraft piracy is in the special aircraft jurisdiction of the United States although the aircraft is not in flight at the time of the attempt if the aircraft would have been in the special aircraft jurisdiction of the United States had the aircraft piracy been completed.

5. As I explain below, I believe that LONG violated 49 U.S.C. § 46502 by seizing and exercising control of an aircraft at the Compton/Woodley Airport through the threat of force and violence, specifically by brandishing what appeared to be a firearm in order to obtain access to the aircraft. The aircraft in question was an aircraft of the United States at a United States airport, a Cessna 152, tail number N4644Q. While the aircraft was not in flight at the time of the attempt, the flight would have been in the special aircraft jurisdiction of the United States had the aircraft piracy been completed.

    a. The "special aircraft jurisdiction of the United States" is defined in 49 U.S.C. § 46501, in pertinent part, as a civil aircraft of the United States in flight.

6. On April 20, 2012, FBI Special Agent Anita Morgan and Los Angeles Police Department Detective/FBI Task Force Officer

James Arroyo interviewed Los Angeles County Sheriff's Deputy Jeff Lohmann at the Compton/Woodley Airport. I read the report authored by SA Morgan and TFO Arroyo that Lohmann told SA Morgan and TFO Arroyo, which stated, among other things, the following:

    a. Deputy Lohmann and his partner Officer Valdivia were working uniformed patrol on April 20, 2012. While on patrol, Lohmann and his partner received a radio call, "Man with a gun at the airport." While enroute to respond to the radio call, Lohmann was requesting additional information on the incident. According to Lohmann, dispatch reported that a person was attempting to get in a plane with a gun. According to dispatch, the plane had a red tail.

    b. Lohmann and his partner responded to 916 West Alondra Avenue, which is the Compton/Woodley Airport. Lohmann observed the airfield through a chain-linked fence. Lohmann observed a male waving his hands in the air. The male stated, "He's got a gun, he's got a gun."

    c. Lohmann observed the suspect, later identified as TROY DANIEL LONG, walking east-bound in the direction of a parked Cessna 152, tail number N4644Q. Then LONG entered the Cessna 152. Lohmann heard the plane's throttle accelerate.

    d. As the plane was powering up, Lohmann observed deputies, guns drawn, approaching LONG's location. As the plane's engine continued to accelerate, the plane's tail dipped-

3

down due to the subject's attempt to accelerate.

  e. Lohmann and his partner entered the airport property and observed LONG in the plane. Lohmann observed the other deputies attempting to verbally order the subject out of the plane. Lohmann saw the deputies mouthing something, then LONG exited the plane. Lohmann observed the subject detained on the left side of the plane.

  f. As LONG was detained, Lohmann saw the butt of a gun in the subject's front right waist-band. Lohmann also explained that a red bandana was wrapped around the gun.

  g. As LONG was detained, and during an in custody search, the subject's gun was removed from his waist-band. During the examination of the gun, deputies determined that the gun was not an operational firearm but a realistic toy gun. During a pat-down search, Lohmann asked the subject what he was doing. The subject stated, "I just wanted to be free."

  7. On April 20, 2012, FBI Special Agent Anita Morgan and Los Angeles Police Department Detective/FBI Task Force Officer James Arroyo interviewed Los Angeles County Sheriff's Deputy Albert Nunez at the Compton/Woodley Airport. I read the report authored by SA Morgan and TFO Arroyo, which stated that Deputy Nunez told SA Morgan and TFO Arroyo, among other things, the following:

  a. Nunez and his partner, Deputy Federico, were

4

working uniformed patrol on April 20, 2012. While on patrol, Nunez and his partner received a radio call, "Man with a gun at the airport." Nunez and his partner responded to the airport and met with Deputy Wilson. Nunez and his partner drove onto the airport, following Deputy Wilson.

        b.   As they were approaching the planes, Nunez heard an engine turn on. Nunez continued to drive his police vehicle towards the plane. Nunez and his partner opened their door and drew their weapons. A man in the cockpit, later identified as TROY DANIEL LONG, looked in their direction and placed his hands up, and then placed his hands down.

        c.   Nunez observed the plane dip when the subject accelerated the plane's engine. Nunez's partner utilized the vehicle's Public Address system. Nunez could not hear his partner's commands due to the plane's loud acceleration noise. Nunez also believes that the subject could not hear his partner's commands due to the plane's loud acceleration noise.

        d.   Nunez heard the plane's engine accelerate about 2 or 3 times. LONG finally placed his hands up while in the cockpit. Nunez observed Deputy Hoyos open the plane's door, and observed Deputy Federico pull LONG out of the plane.

    8.   On April 20, 2012, FBI Special Agent Kevin Hogg and FBI Task Force Officer Ed Becerril interviewed TROY DANIEL LONG at the Los Angeles Sheriff's Compton Station. I know from talking

with SA Hogg and TFO Becerril and from reviewing their report that before beginning the interview, SA Hogg and TFO Becerril presented LONG with an FD 395 Advice of Rights form, which was read out loud to LONG as he read along. LONG stated that he understood the form, and LONG then signed the form, waiving his rights. I further know from SA Hogg and TFO Becerril that LONG told them, among other things, the following:

    a. LONG stated he is currently homeless. LONG claimed to have made an appointment with a flight instructor on April 19, 2012, over the phone. LONG stated he arrived at the Compton Airport "early."

    b. LONG climbed over the fence at the airport's perimeter and waited on the airfield for the staff to arrive. After the office staff arrived, LONG claimed that one of the instructors, described by LONG as a "tall white guy," gave him the keys to an aircraft, a headset, and a "Hobbs" book. LONG said he took one of the wing tie-down chains off the aircraft and the office instructor took the other wing tie-down chain off the aircraft. LONG then sat in the right seat of the plane and started the engine.

    c. LONG stated that he was a pilot and that he could take off and land.

    d. LONG claimed to still have money on his account at the flight training center. LONG denied that he was attempting

to steal the plane. LONG claimed that he was simply waiting for the flight instructor to arrive.

   e. Interviewers asked LONG about the toy gun in his waistband. LONG stated that he liked toy guns and cap guns. LONG denied displaying the gun at the airport, but LONG acknowledged that the toy gun might have been seen when he raised his arms at some point.

   f. LONG stated that if he had gotten airborne, he would have gone "across the world, maybe Mexico."

   g. Near the end of the interview, LONG stated, "I made a mistake. I started the airplane."

  9. On April 20, 2012, FBI Special Agent Nina Vicencia and FBI Task Force Officer Ed Becerril interviewed Preston Vandusen at the Compton/Woodley Airport. I know from talking with SA Vicencia and TFO Becerril and from reviewing their report that Vandusen told SA Vicencia and TFO Becerril, among other things, the following:

   a. Vandusen stated that he has been volunteering at Tomorrow's Aeronautical Museum at the Compton/Woodley Airport for approximately four years. Vandusen volunteers there Tuesday through Saturdays for eight hours a day.

   b. When he arrived at work on April 20, 2012 at approximately 7:30 a.m., he entered through the front door. Vandusen went about his routine of opening up. Vandusen went to

7

get the fuel key and backed up into the shop, locked the door, and initiated a call to the police.

    f.   Vandusen saw LONG take off the tie-down chains from both of the wings and the tail of the aircraft and then get in. Vandusen said that he saw the lights to the aircraft come on. Vandusen assumed that LONG had the wrong keys to the aircraft because LONG got out of the first plane and went to another aircraft. Vandusen said that LONG removed both of the wing tie-down chains and got into that aircraft. Vandusen said that he heard the aircraft start up. Vandusen said that he heard LONG accelerate the engine and saw the plane dip towards the ground, as if he was intending to leave. Vandusen said that because of the tail chain still attached to the plane, LONG was unable to move the aircraft. Vandusen said that the Los Angeles Sheriffs Department squad cars pulled in front of the aircraft, Deputies drew their weapons, and pulled LONG from the aircraft.

    10.   On April 20, 2012, FBI Special Agent Nina Vicencia and FBI Task Force Officer Eddie Martinez interviewed Jason Mellterstig telephonically. I know from talking with SA Vicencia and TFO Martinez and from reviewing their report that Mellterstig told SA Vicencia and TFO Martinez, among other things, the following:

    a.   Mellterstig stated that he has been a flight instructor at the Compton Airport since 2007.

11. Based on the foregoing, I believe there is probable cause to believe that TROY DANIEL LONG knowingly used the threat of force or violence to seize an aircraft at the Compton/Woodley Airport and attempted to seize or exercise control of the aircraft, with wrongful intent, on April 20, 2012, in violation of Title 49, United States Code, Section 46502. I further believe there is probable cause to believe that the aircraft would have been in the special aircraft jurisdiction of the United States had the attempted aircraft piracy been completed.

David Gates
Special Agent-FBI

Sworn and subscribed to before me this 21 day of April 2012.

UNITED STATES MAGISTRATE JUDGE